JOY *vs.* THE INHABITANTS OF THE COUNTY OF OXFORD.

The authority given by *Stat.* 1796, *ch.* 58, *sec.* 3, [*Stat.* 1821, *ch.* 118, *sec.* 24] to the Courts of Sessions to make assessments for the opening and repairing of highways in townships not incorporated, relates only to highways laid out by the order of such Courts.

Where the Court of Sessions taxed lands in a plantation for the repair of a road laid out by the State, and not by the Court, their proceedings were holden merely void ;—and the lands having been sold by the county treasurer for non-payment of the tax, and redeemed by the owner, it was held that he might recover back the money so paid, in an action for money had and received against the county.

THIS was an action for money had and received, &c. and came before the Court upon a case stated by the parties.

The legislature of *Massachusetts*, by a resolve passed *June* 20, 1794, granted to *Jacob Abbot* 4000 acres of land in township No. 6, on condition that he should open a sufficient passable road from *Farmington* to the line of *New-Hampshire*, towards upper *Coos*, and leading through said township ;—on the completion of which, to the satisfaction of the committee for the sale of eastern lands, they were authorized to execute a deed of conveyance to him of the land. This road was completed in the autumn of 1797, and and deed made and delivered *Feb.* 7, 1800, in pursuance of the resolve.

The Court of Sessions for the county of Oxford at their *June* term 1819, after due notice, ordered and assessed a tax of two cents per acre on all the lands in township No. 6, and appointed a committee to collect and expend it in repairing the same road. Of this tax, which was four hundred and forty six dollars and sixty

cents, the plaintiff's proportion was three hundred and eighty two dollars and eighty cents; which being unpaid, all his lands in the township were advertised and sold *July* 6, 1820, to one *Stevens*, by the county treasurer, and a deed of conveyance executed on the tenth of the same month, in the forms prescribed by law; for the consideration of four hundred and seventy dollars, being the amount of the whole tax and charges of sale.

These lands were sold on the twenty seventh of the same month by *Stevens* to *Henry Rust Jun.* ; to whom, on the ninth of *October* following, the plaintiff, in order to redeem his lands, paid the sum of four hundred and fifteen dollars and twenty eight cents, being his proportion of the tax, including interest and charges. *Mr. Rust*, at the time of this payment, was treasurer of the county. The plaintiff also paid twenty dollars more in his endeavors to obtain repayment of this money.

The money obtained from this tax was expended in repairing the road in 1822, but the road was never laid out or accepted by any other authority than that of the State as before mentioned. The plaintiff had prefered a petition to the Court of Sessions for the county of *Oxford*, praying for repayment of the money, which was refused.

*Bond*, for the plaintiff.

The Court of Sessions in assessing the tax, probably supposed their proceedings to be within the *Stat.* 1796, *ch.* 58. But that statute refers only to roads laid out under the authority of the Sessions, after previous notice to the proprietors of lands, to shew cause against the location. But this road was laid out by the State, and to be kept in repair by the State alone, so long as it shall be deemed of public utility. The Sessions had no more authority over it than over a turnpike or toll-bridge ;—and having no jurisdiction of the subject matter, their whole proceedings are merely void. *Sumner v. Parker* 7 *Mass.* 79. *Wales v. Willard* 2 *Mass.* 120. *Cutts v. Haskins* 9 *Mass.* 543. *Smith v. Rice* 11 *Mass.* 507.

If the Sessions had no jurisdiction, the money raised by the sale of the plaintiff's lands must be considered as holden in trust for him who has the lawful right. The county is a corporation ;

the treasurer is its receiving officer, for whose acts the county is responsible ; and his expenditure of the money is a misapplication of it, under an illegal order of the Court of Sessions. *Gray v. Portland Bank* 3 *Mass.* 364. *Winter v. The Bank of New-York* 2 *Caines* 337. And the action is correctly brought against the county ; for being commenced to try a right, it should be sued against the principal, and not against the mere agent or receiver. *Sadler v. Evans* 4 *Burr.* 1984.

*Orr*, for the defendants.

The Court of Sessions had jurisdiction, under the statute of 1796, which speaks generally of roads " laid out," without designating by what authority. Here the State, owning the land, opened and made a public road through it, as they had a right to do. It was legally laid out, for the use of the whole community, when the statute was enacted ; and so is manifestly within its provisions.

If it were not so, yet it had become a public road by more than twenty years use and acquiescence. An indictment would lie for neglect to keep it in repair ; and *a fortiori* it might be repaired as other public highways.

The money was not received nor held for the use of the county. It was expended on a public road, not for the benefit of the county, but of the whole State ; and more for the advantage of the plaintiff than of any other citizen or corporation ;—and on this ground also, this action cannot be supported.

MELLEN, C. J. delivered the opinion of the Court.

By an examination of the statute of *Massachusetts* of 1796, *ch.* 58, under the supposed authority of which the assessment was made by the Court of General Sessions of the Peace of the county of Oxford, we are satisfied that the construction given to it by the counsel for the defendants, cannot be correct. The act is entitled " An Act in addition to the several Acts now in force respect- " ing Highways." The authority given in the *third* section, to the Courts of General Sessions of the Peace to make assessments for the purpose of defraying the expenses of making and mending

highways in tracts of land not comprehended within the bounds of any incorporated town or plantation, has an evident relation to highways *laid out by such Courts*, and to such only. The introductory part of the section plainly shews this. The language is, " that the Court of General Sessions of the Peace in the several counties of this Commonwealth, *whenever application shall be made to them* to lay out any new highway through any such tract, &c. or for an order thereof to *amend or repair* any highway *already laid out* in the same," &c. The section proceeds to give power in such cases to the Court to make an assessment on such tracts of land, &c. for making or amending *such* highway, &c. In fact, the provisions of this statute cannot be considered as having reference to any highways, except such as *had been* or *should be* laid out by the Court of General Sessions of the Peace ; the act being intended as an *extension* of the power of such Courts as to highways in unincorporated tracts of land.

Hence it follows that, as that Court in the county of Oxford undertook to assess and did assess the lands of *Mr. Joy*, to defray the expense of amending and repairing the road made by *Mr. Abbot*, according to his stipulation with the Commonwealth of *Massachusetts*,— a road never laid out by that Court, but merely by an individual under contract, or the condition of his grant; we are very clear that the tax was illegal; and that the Court had no kind of jurisdiction in the case, any more than though the lands had been situated in the county of *Cumberland*. The Court having no jurisdiction, the assessment was a perfect nullity; not merely *voidable*, but *absolutely void*. It is equally clear that when the lands were sold by the county treasurer to *Stevens*, and the money arising from the sale was paid into the county treasury, the sale being void, *Stevens* or his grantee might have recovered back from the county the money thus paid by him without any valuable consideration. The case finds that while the right of redemption existed, *Joy* paid into the county treasury the amount of the taxes assessed and incidental expenses, being $415 28, which sum he was *compelled* to pay to prevent a sacrifice of his property. The sum thus paid has put an end to all pretence of title in *Stevens* or his grantee; and has also relieved the county from all liability on account of their treasurer's

sale, by thus furnishing them with funds equal to the purchase money which *Stevens* paid. The above sum is thus paid by the plaintiff to the use of the county, and is now recoverable by him in the present action. Though the tax was assessed without any authority, the county have received its amount into their treasury; and the Court of Sessions, who defend this action as the authorized and legal agents of the county, have thus sanctioned the appropriation of the plaintiff's money as the act of the county. Hence the county is responsible, a legal demand having been made for the amount above mentioned. It is no answer to this action that the monies thus collected and paid into the treasury, have since been expended in repairing the road made by *Abbot.* Such an appropriation of it, without the consent of the plaintiff, was unlawful. As to the money, which he has paid for certain expenses in endeavoring to obtain a repayment of the money sued for, it cannot be allowed. But we are clearly of opinion that the plaintiff is entitled to recover the above sum of $415 28, and interest from the first day of *July* 1822.

A default must be entered and judgment rendered accordingly.